COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Clements and Senior Judge Hodges
Argued at Chesapeake, Virginia


MARTEL LAMON JOFFRION

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2183-99-1      JUDGE JEAN HARRISON CLEMENTS
                                        DECEMBER 5, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                    Frederick H. Creekmore, Judge

           Peter J. Jankell (Peter J. Jankell, P.C., on
           brief), for appellant.

           Eugene Murphy, Assistant Attorney General
           (Mark L. Earley, Attorney General, on brief),
           for appellee.


     Appellant Martel Lamon Joffrion was convicted in a jury trial

of robbery, attempted robbery, and two counts of using a firearm

in the commission of a felony.  On appeal he contends the trial

court erred (1) in admitting into evidence an assault-rifle-styled

pellet gun that, while found in the vehicle in which appellant was

a passenger, was not used in the commission of the crimes for

which appellant was being tried, (2) in admitting testimony

regarding appellant's prior offenses, and (3) in allowing the

Commonwealth to impeach appellant on collateral matters.  For the

reasons that follow, we affirm appellant's convictions.

─────────────
        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts necessary to a disposition of this appeal. "Upon familiar principles, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Pavlick v. Commonwealth, 27 Va. App. 219, 223, 497 S.E.2d 920, 922 (1998) (en banc).

A.  ADMITTANCE OF PELLET GUN

Appellant contends that the trial court erred in admitting into evidence a pellet gun that looked like an assault rifle. Joffrion asserts the weapon was inadmissible because, even though it was found in the car in which he was riding, it was unrelated to the offenses for which he was being tried and was extremely prejudicial.[1]

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."

---

[1] Joffrion also asserts, in arguing this claim of error, that there was no evidence that he knew of the existence of the pellet gun. In viewing the evidence in the light most favorable to the Commonwealth, however, we cannot find that the evidence supports such an assertion. The officer who found the weapon stated that he saw it and was able to identify it as an apparent R-15 assault rifle as soon as he opened the back door where the appellant was seated. The fact finder could reasonably have inferred from such evidence that appellant knew of its existence. Nevertheless, whether appellant knew or did not know the pellet gun was there has no bearing on our determination of this issue on appeal.

-

Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "'[A] trial court by definition abuses its discretion when it makes an error of law.'" Taylor v. Commonwealth, 28 Va. App. 1, 9, 502 S.E.2d 113, 117 (1998) (en banc) (alteration in original) (quoting Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (internal quotations omitted)).

"Evidence is admissible if it tends to prove a matter that is properly at issue in the case and if its probative value outweighs policy considerations." Blain, 7 Va. App. at 17, 371 S.E.2d at 842. "Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant." Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (quoting McNeir v. Greer-Hale Chinchilla Ranch, 194 Va. 623, 629, 74 S.E.2d 165, 169 (1953)). However, "[i]f the prejudicial effect of nominally relevant evidence outweighs its probative value, the evidence is inadmissible." Singleton v. Commonwealth, 19 Va. App. 728, 734, 453 S.E.2d 921, 925 (1995) (en banc).

Assuming without deciding that the pellet gun was inadmissible, we must determine whether its admission into evidence was harmless error. A non-constitutional error by the trial court is harmless if "'it plainly appears from the record and the evidence given at the trial that' the error did not affect the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678). "An error does not affect a verdict if a reviewing

-

court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Id. "Each case must . . . be analyzed individually to determine if an error has affected the verdict." Id. at 1009, 407 S.E.2d at 913.

In this case, it plainly appears from the record and the evidence given at trial that the error did not affect the jury's verdict. The gun used in the commission of the robbery and attempted robbery, a .38 caliber handgun, had already been introduced into evidence. Further, the police officer who found the pellet gun in the car in which appellant was riding explained at trial that, while it resembled an assault rifle, the pellet gun was actually an air gun ("operated by $CO_2$ gas cartridges") that fired pellets rather than bullets. It was never suggested to the jury that the pellet gun was used to commit the offenses for which Joffrion was being tried. In fact, other than the officer's brief description of it and of his seeing it in the car and its subsequent admission into evidence, the pellet gun was not referred to at trial in the jury's presence. Cf. Conway v. Commonwealth, 12 Va. App. 711, 716, 407 S.E.2d 310, 313 (1991) (en banc) (finding that the admission of an inadmissible recording, which undercut the defendant's credibility, was harmful error based, in part, on the Commonwealth's emphasis on the recording's import in closing argument).

-

We can conclude, therefore, without usurping the jury's fact finding function, that, had the pellet gun not been admitted, the verdict would have been the same. Accordingly, its admission was harmless error.

## B. PRIOR OFFENSES EVIDENCE

Appellant also asserts that the trial court erred when it permitted the Commonwealth to present evidence of his activities earlier that same night in Virginia Beach, including a possible attempted robbery and shooting the gun used in the commission of the instant charges. Appellant contends that the evidence of those prior activities was "wholly unrelated" to the crimes occurring in Chesapeake for which he was on trial and that its prejudicial impact outweighed its probative value. We disagree.

Generally, evidence of prior offenses is inadmissible to prove the accused is guilty of the crime charged. Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998). Such evidence is inadmissible because "it may confuse the issues being tried and cause undue prejudice to the defendant." Id.

However, evidence of prior offenses is admissible if it is "relevant to a material issue or element of consequence in the case." Foster v. Commonwealth, 5 Va. App. 316, 319, 362 S.E.2d 745, 747 (1987). Such evidence is admissible, "for example, where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial." Barber v. Commonwealth, 5 Va.

-

App. 172, 180, 360 S.E.2d 888, 892 (1987).  "Also, evidence of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part." Id.  Such evidence, though, even if otherwise admissible as an exception to the general rule of exclusion, may not be admitted if its prejudicial impact outweighs its probative value, a determination which is within the trial court's discretion and one that will not be overturned absent an abuse of discretion.  See Robbins v. Commonwealth, 31 Va. App. 218, 222-23, 522 S.E.2d 394, 396 (1999).

In the present case, appellant asserted at trial the common law affirmative defense of duress.  Duress excuses the defendant's criminal conduct where that conduct "was the product of an unlawful threat that caused him reasonably to believe that performing the criminal conduct was his only reasonable opportunity to avoid imminent death or serious bodily harm, either to himself or to another."  Sam v. Commonwealth, 13 Va. App. 312, 324, 411 S.E.2d 832, 839 (1991).  "Where the defendant fails 'to take advantage of a reasonable opportunity to escape, or of a reasonable opportunity to avoid doing the acts without being harmed, he may not rely on duress as a defense.'"  Graham v. Commonwealth, 31 Va. App. 662, 674-75, 525 S.E.2d 567, 573 (2000) (quoting Pancoast v. Commonwealth, 2 Va. App. 28, 33, 340 S.E.2d 833, 836 (1986)).

In support of his asserted defense of duress, Joffrion testified at trial that, while not expressly threatened by his cohort who had the gun during the commission of the crimes, he committed the crimes only because he felt threatened and was afraid his cohort would kill him if he did not. He further testified that he did not escape from his cohorts before committing the charged crimes because he did not know until shortly before the commission of the crimes themselves that one of his cohorts had a gun with him and that his cohorts planned to rob someone to get money. And once he knew about his cohorts' intention and about the gun, he did not escape from them despite having the opportunity to do so because he could have gotten "shot in the back" and because his cohorts knew where he lived. Accordingly, whether appellant was an unwilling participant in the charged crimes acting under duress, had prior knowledge of the gun, and knew beforehand of his companions' plan to commit robbery were material facts at issue in this case.

To refute appellant's claims, the Commonwealth offered, over Joffrion's objection, the testimony of the Virginia Beach police officer who took Joffrion's statement about events that occurred earlier that same night in Virginia Beach. Viewed in the light most favorable to the Commonwealth, that evidence established that, before going to Chesapeake that night, Joffrion and his cohorts in the charged crimes first went to Virginia Beach, where one of Joffrion's cohorts gave him the handgun later used in the

-

Chesapeake robbery.  Joffrion and his cohorts planned to confront a group of people so that one of Joffrion's companions could get money from a person who had apparently just been paid for construction work he had done.  Upon confronting the group of people, Joffrion told them "to get down on the ground."  When instead everyone started running away, Joffrion fired the gun three times.  He then ran to his friend's car and returned the gun to one of his cohorts, who, rather than returning it to the person who gave it to him originally, kept it.  Joffrion and his cohorts then drove to Chesapeake.  At no point during his statement regarding the Virginia Beach incidents did Joffrion indicate that his cohorts had threatened him or that he was afraid of them.

We find that the Virginia Beach police officer's testimony was fully relevant and probative as to the issue of duress.  It tended to show that Joffrion, having just participated in a failed robbery, knew of his cohorts' general scheme to rob someone to get money before going to a nightclub in Chesapeake; that Joffrion knew one of his cohorts still had the gun he had just fired three times; and that Joffrion, having willingly participated in the first robbery attempt, was not acting under duress during the robbery in Chesapeake.  Accordingly, the evidence of Joffrion's earlier activities that night was admissible as an exception to the general rule of exclusion.

Furthermore, we cannot say that the evidence's inherent prejudicial impact outweighed its probative value.  Thus, we find

-

that the trial court did not abuse its exercise of discretion in admitting the challenged evidence of appellant's prior offenses.[2]

## C.  IMPEACHMENT ON COLLATERAL MATTERS

Appellant further asserts that the trial court erred in allowing the Commonwealth to impeach him on collateral matters. Specifically, he maintains that, because the prior offenses that occurred in Virginia Beach were "wholly unrelated" to the events for which he stood trial, they were collateral matters.  The Commonwealth, therefore, should not have been permitted to cross-examine him regarding those prior offenses and should not have been allowed to present the Virginia Beach police officer

---

[2] Appellant also suggests by implication in his argument on this claim that the evidence regarding Joffrion's statement to the Virginia Beach police was inadmissible because he was not prepared at trial to defend himself relative to the earlier incidents.  While it is well settled that "[e]vidence that implicates an accused in other crimes unrelated to the offense for which the accused is being tried is inadmissible because it creates confusion of issues, causes unfair surprise, and causes undue prejudice," Singleton v. Commonwealth, 19 Va. App. 728, 742, 453 S.E.2d 921, 929 (1995) (en banc) (Benton, J., dissenting) (emphasis added), here we have found that the evidence of the prior offense was admissible because the prior offense was related to the offense for which Joffrion was being tried, that the evidence of the prior offense was relevant to prove a material fact, and that the relevance of the challenged evidence outweighed its prejudicial effect.  Furthermore, we would also echo the trial court's admonishment that, given the close connection between the prior misconduct and the facts at issue in this case, the accused was responsible for sharing all known and accessible information pertinent thereto with his counsel prior to trial to enable the full preparation of his defense.  That he did not fails to justify his claim of surprise and lack of preparation.

as a witness to impeach his testimony on those collateral

matters, Joffrion argues.  Again we disagree.

Appellant is correct in stating,

> [n]o question respecting any fact irrelevant
> to the issue can be put to a witness on
> cross-examination for the mere purpose of
> impeaching his credit by contradicting him.
> And if any such question be inadvertently
> put and answered, the answer of the witness
> will be conclusive. . . .  [H]e cannot be
> asked as to any collateral independent fact
> merely with a view to contradict him
> afterwards by calling another witness.

Allen v. Commonwealth, 122 Va. 834, 842, 94 S.E. 783, 785-86

(1918) (internal quotations omitted).  However, if the evidence

in question "tends, even slightly, to throw light upon the main

fact in issue, it is not collateral, but probative."  Seilheimer

v. Melville, 224 Va. 323, 327, 295 S.E.2d 896, 898 (1982).

"Every fact, however remote or insignificant, that tends to

establish the probability or improbability of a fact in issue,

is admissible."  Id.

Having already found that Joffrion's bad acts in Virginia

Beach preceding the charged crimes were relevant to material

facts at issue in this case, we hold that the prior offenses

were not collateral matters.  The principle disallowing the

impeachment of a witness on collateral matters does not,

therefore, apply here.  Accordingly, the trial court correctly

allowed the cross-examination and testimony in contention.

-

For the reasons stated herein, we affirm appellant's convictions.

<u>Affirmed.</u>